IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-01666-RPM

JOHN H. McKIBBEN,

                              Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                              Defendant.

_____

ORDER FOR REVERSAL AND REMAND
_____

John H. McKibben's application for Supplemental Security Income (SSI) based on disability under Title XVI of the Social Security Act (the Act) was denied based on the decision of an Administrative Law Judge (ALJ), dated April 9, 2007, following a hearing held on February 28, 2007. That decision must be reversed because the ALJ failed to evaluate the vocational effects of the applicant's non-exertional limitations identified by an examining psychologist and the relationship between that assessment and the absence of medical and employment records. There is such scant information concerning Mr. McKibben that it is not possible to assess the ALJ's conclusion denying disability at Step 5 because of a residual functional capacity to perform the light unskilled jobs of newspaper deliverer, coin machine collector and production worker.

There are no medical treatment records. Mr. McKibben has expressed an irrational fear of doctors and all authority figures as well as the public. Dr. Johler, M.D.,

examined Mr. McKibben for the Colorado Department of Human Services on February 15, 2005, who diagnosed chronic knee pain and observed a limping gait favoring the left leg, and concluded that the applicant was not totally disabled, but does have a physical or mental impairment that substantially precludes him from engaging in his "usual occupation." (R. 99-101). Of this opinion, the ALJ said: "Overall, the undersigned gives this examining physician's opinion of disability little weight. . . Further, the claimant has not taken or used any pain or anti-inflammatory medication during the relevant period. It is presumed that if he did, his pain symptoms would improve and he would function better." (R. 21.)

On June 4, 2005, consultative physician Bryce Gilman, D.O., examined McKibben and found limitations of his ability to walk and stand. Of these findings, the ALJ wrote: "The undersigned gives this opinion of the claimant's work ability some weight, but finds limitations in walking and/or standing is not consistent with the lack of medical evidence to show any treatment for his complaints of pain and limitation." (R., p. 22).

On October 9, 2006, Louis Hoffman, Ph.D., a consultative psychologist, conducted a comprehensive evaluation. With regard to Mr. McKibben's mental status, Dr. Hoffman noted that "McKibben showed many signs of an unusual and disorganized thought process. He had difficulty understanding questions and would give answers that did not fit the question. . . He reports being fearful of people, particularly doctors, and that he often tries to avoid having to see them for any reason." Dr. Hoffman also noted that the applicant had difficulty with attention and concentration, and showed memory problems. Further, he showed many signs of depression and reported "a good

2

deal of anxiety. He also described paranoia which appears to be related to the anxiety."
(R., pp.121-122).

In addition to a mental status determination, Dr. Hoffman administered to Mr. McKibben the Wechsler Adult Intelligence Scale - Third Edition (WAIS-III) as an assessment of his overall cognitive functioning. His full scale IQ score was in the low average range, "with particular difficulties in working memory and perceptual organization. Limitations in perceptual organization may cause difficulties doing jobs which require him to manipulate information. His working memory also may make it difficult for him to learn and adjust to new employment tasks or settings." (R., pp. 123-126). Dr. Hoffman also thought a neuropsychological evaluation might be helpful in assessing Mr. McKibben. (R., p.126). Dr. Hoffman diagnosed Mr. McKibben with major depressive disorder and panic disorder with agoraphobia, and determined that Mr. McKibben had a global assessment of function ("GAF") of 48.

In diagnosing anxiety problems including panic disorder with agoraphobia, Dr. Hoffman wrote that Mr. McKibben:

> began to experience a panic attack in this session, though it did not continue to a full blown panic attack. He described panic attacks as having accelerated heart weight, flood of emotion, sweating, trembling and shaking, nausea, and dizziness. He also has some numbness, hot flashes and chills, and occasional difficulty breathing during these times. They typically last up to half an hour, though sometimes they have lasted longer. The panic attacks appear to happen in a variety of situations, and when they have occurred in some situations he has tried to avoid those at a later time. This is part of the reason he will only go to the store late at night or early in the morning when there are not many people at the stores.

(R., pp. 122-123).

The ALJ noted these findings, but said they amounted to "a subjective

3

quantification" of Mr. McKibben's functioning, and were not consistent with his level of functioning. The ALJ also said that it appeared that the psychologist's GAF score factored in Mr. McKibben's physical pain, which is not within the examiner's expertise. The ALJ completely rejected the examiner's conclusion as to a GAF of 48, stating that "the global assessment of function score is considered invalid for purposes of this decision. The undersigned anticipates that, if the claimant were to undergoing (sic) mental health treatment (therapy and/or medication), his mood and mental functioning would improve." (R. 71). At the hearing, the ALJ noted that a GAF of 48 was indicative of a marked level of impairment, but that the form completed by Dr. Hoffman, as opposed to the narrative, indicated mild and moderate impairment. (R., pp. 127-129; 140-142).

Not surprisingly, the ALJ gave "great weight" to a vocational rehabilitation report, dated December 22, 2006, in which a DVR counselor opined that Mr. McKibben could perform light exertional work and he would need to alternate between standing/walking due to his knee pain. The counselor, John Ferlin, had a physical limitations form prepared by a physical therapist, James Renell, who apparently met with Mr. McKibben to make the assessment.

Much of the ALJ's opinion hinged on the finding that Mr. McKibben's statements concerning the intensity, persistence and limiting effects of his symptoms are not entirely credible. The ALJ also found that Mr. McKibben's lack of using medication "impact negatively on his credibility." The ALJ wrote: "The undersigned assumes that with proper treatment his [McKibben's] mental and physical pain would greatly improve. However, the above residual functional capacity is based on the claimant's functioning

4

during the assessments by Dr. Hoffman, the examination by . . . Dr. Gilman, when he was not in treatment and not using medication . . ."  (R. 20).

The ALJ did not appear to recognize that the absence of medical treatment records and medications for treatment of pain were entirely consistent with Dr. Hoffman's diagnosis.  The ALJ recognized that Mr. McKibben has never had substantial gainful employment.  He cared for his invalid mother for 12 years, receiving $75.00 weekly from her welfare benefits payments.  The ALJ and the VE equated that with the job of a home health care provider, without any evidentiary basis for the comparison.

The transcript of the ALJ hearing is mostly colloquy among the ALJ, the applicant's attorney and the VE.  Very little inquiry was made of Mr. McKibben.  There was no effort to obtain information about the history of the injuries producing the pain and exertional limitations found by the examining physicians.

Contrary to the ALJ's statement that the finding of residual functional capacity was based on the claimant's functioning during the examinations by doctors Gilman and Hoffman, the ALJ, as noted above, gave their opinions little weight.  The ALJ failed to include within the hypothetical posed to the VE all of the physical and mental limitations noted by those examining doctors. In response to a hypothetical, the VE could list some jobs, but as the limiting psychological factors were added, the scope of jobs was narrowed to three, and then to only two, when age was considered.  Further, the VE never factored in the effects of McKibben's anxiety attacks and panic disorder.  On cross-examination the VE admitted that it would be difficult to employ a person that had attacks twice per week lasting thirty minutes. (R., p. 163).

The ALJ concluded the hearing with the following hectoring statement:

5

> No matter what I do, Social Security is a pretty meager existence. Certainly better than nothing but it's not much to really get secure on. And even if I were to award disability, I think in the long term, you're better off financially if you can find something, even a part time minimum wage type job would probably put you in a better financial position. And it probably is also better for you psychologically. If you get to the point where you keep giving in to your anxiety and withdrawing and staying home, feeling sorry for yourself, it's kind of like a whirlpool. You know, it spins and it sucks you down and if you can break that cycle and get out and kind of get into a protected environment where you don't feel constantly at risk but you start to get some positive feedback from being able to do something constructive, I think, I think you would be better off. Now, whether that's possible, or practical, I don't know. But you're young enough that you really shouldn't give up on yourself. You should keep getting out there and trying to keep on and the first step, I think, is to stay on people at the Rehabilitative Services. I think another step that's important is to keep on seeing whether or not you can arrange some counseling type things and seeing if there are any medications that might be able to, they won't cure you but they might stabilize some of your anxieties and get some of that under control.

(R. 171-172).

That statement reveals much about the reasons for the denial of this application.

The decision must be reversed. On remand, the Commissioner should obtain neuropsychological evaluations from competent professionals to assess Mr. McKibben's ability to function in any type of gainful employment.

Upon the foregoing, it is

ORDERED, that the decision denying disability is reversed and this matter is remanded for further evaluation.

Dated: November 21st, 2008

BY THE COURT:

s/Richard P. Matsch
_____
Richard P. Matsch, Senior Judge